UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLIFTON J. TERRELL,

    Plaintiff,

v.

C. E. DUCART, et al.,

    Defendants.

Case No. 17-cv-03924-WHO

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 28

## INTRODUCTION

Plaintiff Clifton Terrell alleges that staff at Pelican Bay State Prison violated his First Amendment rights because there was a delay of two months in fulfilling his requests for a kosher diet.[1] Defendants contend that no violation of Terrell's constitutional rights has been shown and that any delay was caused by his failure to provide the proper paperwork. Their motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

The following factual allegations are undisputed, unless specifically noted otherwise. To receive kosher meals, an inmate at PBSP must fill out the California Department of Corrections (CDCR) Form 3030 Religious Diet Request. (Mot. For Summ. J. (MSJ), Losacco Decl., Dkt. No.

---

[1] Terrell's opposition to summary judgment states that he is bringing claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). However, no RLUIPA claim was included in the amended complaint. (Order of Service, Dkt. No. 12 at 2-3).

34 at 2). The request is reviewed by the chaplain, and the inmate is interviewed. (*Id.*) Once approved, the inmate must sign the program agreement form and the inmate is added to the religious diet program list. (*Id.*) An inmate arriving from another institution must be reviewed by PBSP staff before being placed on the religious diet program list. (*Id.*)

At PBSP, once a chrono is issued authorizing a religious diet for an inmate, a completed chrono is sent to the inmate, the Records Office, Food Service, and the Community Resource Manager (CRM). (MSJ, Losacco Decl., Dkt. No. 34 at 4). The chaplain adds the inmate to the Religious Diet Program list. Food Services receives a copy of the chrono and confirms that the inmate's name appears on the religious diet program list. (*Id.*) Once Food Services confirms that the inmate is on the list, Food Services orders the kosher meals for the inmate. (*Id.*) The meals are produced off site by a third-party vendor. (*Id.*)

Terrell was transferred to PBSP on August 7, 2014. He is Jewish, and as part of the practice of his faith he eats kosher meals. There was no record of a prior religious diet chrono in Terrell's file (*id*. at 3-4), although he alleges that he was approved for kosher meals at the institution that housed him prior to PBSP. (Plaintiff's Decl., Dkt. No. 40 at 2). He did not receive his first kosher meal at PBSP until October 7, 2014.

Terrell states that he sent Chaplain Abdullah a Form 22 to request kosher meals on August 10, 2014, just days after arriving at PBSP on August 7.[2] (*Id*. at 2-3, 15). He sent another Form 22 to Abdullah on August 24 and a third on September 16. (*Id*. at 2-3, 16-27). There is no response written on any of the forms. Abdullah declares that he has no recollection of receiving this correspondence. (MSJ, Abdullah Decl., Dkt. No. 32 at 2).

Terrell contacted CRM Losacco on September 16 about getting kosher meals, and on September 24 Abdullah issued a chrono authorizing Terrell to be placed on the list for kosher meals. (*Id*. at 2-3). Defendants assert that because there was no proof that Terrell was previously authorized to received kosher meals --- Terrell had not provided the meal card from his prior prison, chrono or Form 3030, and there was not evidence of one in his central file --- it took

---

[2] Form 22 allows an inmate to request an interview, item or service from prison staff. It does not exhaust administrative remedies for purposes of court actions. 15 Cal. Code Regs. § 3086.

2

several days to obtain that information from Terrell's prior prison placement. (MSJ, Losacco Decl., Dkt. No. 34 at 3-4). Once Losacco obtained proof from the prior placement, Abdullah issued the chrono which began the process for Terrell to receive the meals. (*Id.*)

On October 1, 2014, one week before receiving his first kosher meal, Terrell filed a Form 602 administrative appeal, which was denied at the third level of review in July 2015. (MSJ, Dkt. No. 36 at 5-51). Two years later, Terrell filed this federal lawsuit. He names as defendants C.E. Ducart, the warden; Robert Losacco, the Community Resource Manager; Gary Abdullah, the chaplain and Religious Diet Coordinator; M. Gomez, a cook supervisor; R. Peterson, a correctional officer; and Officer Holt, a correctional officer.

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp.v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine dispute of material fact, the moving party wins. *Id.*

The court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to

3

make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014).

## DISCUSSION

### I. FIRST AMENDMENT

#### A. Chaplain Abdullah

Terrell alleges that Chaplain Abdullah violated his First Amendment rights by failing to timely respond to his requests for kosher meals. The parties dispute whether Terrell followed the proper procedures by trying to contact Abdullah rather than submitting his prior Form 3030, chrono or meal card to the CRM.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citations omitted). In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (per curiam).

At the same time, requiring an inmate to complete an application in order to receive a kosher meal is constitutional. *Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir. 2003).[3] The state

---

[3] "When a prison regulation impinges on an inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur*, 514 F.3d at 884, citing *Turner v. Safley*, 482 U.S. 78, 89 (1987). Here, Terrell challenges delay, not a particular prison regulation. To the extent he attempts to challenge the regulations requiring an application process in order to receive kosher meals, such a challenge fails as the Ninth Circuit already determined in *Resnick* that it is constitutional for prisons to have an application process in order for inmates to receive religious meals.

4

regulations mandate that any inmate who claims to require a religious diet is responsible for completing the CDCR Form 3030, Religious Diet Request, and submitting it to the appropriate institution's chaplain. 15 Cal. Code Regs. § 3054.4(a) (2014). No more than 30 calendar days shall pass from the day the chaplain receives the completed Form 3030, which results in a determination of program eligibility, to the day an accepted inmate begins receiving religious meals. *Id.* Once the Form 3030 is received, the chaplain shall interview the inmate and determine the inmate's religious diet eligibility. 15 Cal. Code Regs. § 3054.4(b) (2014). If the inmate is eligible, the chaplain explains CDCR's Religious Diet Program Agreement, CDCR Form 3030A, and has the inmate sign it. *Id*. The chaplain completes the Religious Diet Program Agreement and notifies the inmate by sending him a copy of the completed CDCR Form 3030 Religious Diet Request. *Id*. Once approved, the inmate's information is entered into a religious diet program list that identifies all inmates participating in the religious-diet-program. *Id*. The inmate is provided a Religious Diet Card. *Id*. Inmates may be added to the list on a daily basis. Staff audits the list and ensures that the list is updated every 30 days. *Id*. Additionally, inmates must "have the ability to continue participating in their current Religious Diet Program at the receiving institution, barring medical needs or other extraordinary circumstances." 15 Cal. Code Regs. § 3054(c).

Defendant Losacco asserts that an inmate must provide a copy of the chrono, Form 3030, or meal card from his prior institution to the CRM to prove he has already been approved for the religious diet program. (MSJ, Losacco Decl., Dkt. No. 34 at 3.) Terrell counters that he was told to contact the chaplain in order to begin receiving kosher meals at PBSP after being approved for them at his prior institution. (Plaintiff's Decl., Dkt. No. 40 at 2). Although the parties dispute whether Terrell followed the proper procedure, Terrell has not presented evidence that precludes granting the motion for summary judgment.

The undisputed record shows that Abdullah did not deny Terrell's request for kosher meals. Terrell made three attempts to contact Abdullah to request the kosher meals between August 10 and September 16. He did not submit a Form 3030, as required by the regulations, nor a chrono or meal card from his prior institution. But even if Terrell's requests were sufficient to put Abdullah on notice of Terrell's desire for kosher meals, his First Amendment claim fails

5

because Abdullah actually issued the chrono authorizing the meals on September 24, after Losacco was able to confirm that Terrell had a previously approved CDCR Form 3030. It is undisputed that the issuance of a chrono only begins the process to get kosher meals. Several other steps are also required, such as Food Services verifying the religious diet list, placing the order, and the third-party vendor fulfilling the order offsite. In this case, it took approximately 12 days between issuance of the chrono and Terrell's receipt of his first kosher meal.

While the record shows that there was some delay in Terrell's receipt of kosher meals, he has not alleged facts sufficient to constitute a constitutional violation because Abdullah's delay in issuing the chrono was brief, no matter whether the delay is measured from the first Form 22 (August 10, 2014) or the contact with Losacco on September 16. *See e.g. Green v. Paramo*, 2018 WL 6062359, at *4 (S.D. Cal. Nov. 20, 2018) (5 month delay in processing religious diet application not unconstitutional); *Taylor v. Pelican Bay*, 2010 WL 2671989 (N.D. Cal. July 2, 2010) (two month delay in processing religious diet application not unconstitutional); *Holiday v. Giusto*, 2004 WL 1792466, at *5 (D. Or. Aug 10, 2004) (18 day delay in processing religious diet application not unconstitutional). Accordingly, this claim does not survive summary judgment.

B. Warden Ducart

Terrell alleges that he sent a Form 22 to Warden Ducart to try and "resolve my kosher dilemma," and never got a response. (Opp., Plaintiff's Decl., Dkt. No. 40 at 4, 14). He has submitted a copy of the Form 22 that he sent to Ducart on September 23. (*Id*.) Ducart asserts that he has no recollection of receiving correspondence from Terrell regarding kosher meals, but that if he had, he would have forwarded any such inmate requests to the CRM, as Ducart had delegated responsibility for the religious diet program to the CRM. (MSJ, Ducart Decl., Dkt. No. 35 at 2). Indeed, Terrell sent his Form 22 to Ducart on September 23, at which point the undisputed record shows that the CRM was already working to resolve Terrell's kosher request and the chrono authorizing kosher meals was issued just one day later, on September 24. (MSJ, Losacco Decl., Dkt. No. 34 at 3). Terrell has no claim against Ducart on this ground.

Terrell also contends that Ducart failed to properly train his subordinates, resulting in a violation of his rights. (Plaintiff's Decl., Dkt. 40 at 4). Terrell's allegation is a conclusory

6

statement lacking a factual basis, and there is no evidence that Ducart participated in or directed any violation of Terrell's rights. "Liability under section 1983 arises only upon a showing of personal participation. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (internal citation omitted). Terrell has not shown evidence to preclude summary judgment with respect to this claim.

### C. Gomez

Terrell asserts that he contacted Gomez, the cook supervisor, via a Form 22 to inform him of his dietary needs, his prior approval to get kosher meals, and his need to be put on the kosher list immediately. He never heard back from Gomez. (Opp., Plaintiff's Decl., Dkt. No. 40, at 3). He further alleges that due to Gomez's "discriminatory negligence" he was unable to observe his sincerely held belief. (*Id.*)

The undisputed record shows that Gomez lacked authority to add an inmate to the Religious Diet list or to give an inmate a kosher meal if he was not on the list. (Gomez Decl., Dkt. No. 33 at 2-3). Terrell has not shown any evidence that precludes summary judgment on his claim that Gomez violated his First Amendment rights.

### D. Losacco

#### i. Exhaustion

Defendants move for summary judgment on the grounds that Terrell failed to exhaust his administrative remedies regarding Losacco before filing suit. Terrell does not dispute Losacco's assertion that he failed to exhaust and has shown no evidence that would preclude summary judgment for failure to properly exhaust.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). If undisputed evidence viewed in the

7

light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 Cal. Code Regs. § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *Id.* In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first level appeal filed with one of the institution's appeal coordinators, (2) second level appeal filed with the institution head or designee, and (3) third level appeal filed with the CDCR director or designee. *Id.* § 3084.7. Administrative remedies are not exhausted as to a claim where the administrative appeal, liberally construed, does not have the same subject and same request for relief. *See Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010).

In addition, the PLRA exhaustion requirement requires "proper exhaustion," which means compliance with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). California prison regulations require the grievance to "describe the specific issue under appeal and the relief requested," "list all staff member(s) involved and [] describe their involvement in the issue," and "state all facts known and available to [the inmate] regarding the issue being appealed" at the time the grievance is submitted. 15 Cal. Code Regs. § 3084.2(a). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602." *Id.* at § 3084.1(b).

Terrell filed a CDCR Form 602 administrative appeal on October 1, claiming that there was a failure to "make every reasonable effort to provide for my religious and spiritual welfare." (Opp., Dkt. No. 40 at 6). In the administrative appeal, he grieved being denied kosher meals and named Abdullah, Gomez, Ducart and Peterson as the responsible parties. There is no mention of Losacco. Terrell's administrative appeal was denied at the first, second, and third levels of

8

administrative review. At the third level of review, the denial decision also noted that Terrell added additional claims to his grievance in contravention to the regulations and that therefore those additional claims would not be addressed in the decision.

Summary judgment will be granted in favor of Losacco because the undisputed record shows that he was never named, nor were his actions described, in the 602 form as required by 15 Cal. Code Regs. § 3084.2(a).

### ii. Merits

Even if the Court were to examine the merits, Losacco asserts that he is entitled to summary judgment on Terrell's First Amendment claim because any delay in receiving kosher meals is attributable to Terrell for failing to follow prison procedure and submit paperwork to Losacco. The parties dispute whether Terrell took the proper steps to inform PBSP staff that he had been previously approved for kosher meals and provide them with the necessary paperwork. Defendants allege that Terrell was supposed to contact the Community Resource Manager (Losacco) and provide him with a copy of his prior meal card, chrono, or Form 3030 to show that he was previously getting kosher meals. (MSJ, Losacco Decl., Dkt. No. 34 at 3). Losacco contends that Terrell never submitted that required paperwork. (*Id*.)

Terrell has not shown any evidence to dispute defendants' assertion that he never submitted to Losacco a copy of his form 3030, chrono or meal card from the prior institution. However, he alleges that he was instructed to contact the chaplain to receive kosher meals and tried unsuccessfully to do so several times. (Opp., Plaintiff's Decl., Dkt. No. 40 at 2-3). Indeed, the other defendants state that in 2014 they would have told an inmate seeking kosher meals to submit the request to the chaplain in accordance with prison policy. (MSJ, Holt Decl., Dkt. No. 30 at 2; Gomez Decl., Dkt. No. 33 at 3; Peterson Decl., Dkt. No. 29 at 2).

But even assuming that Terrell's allegations are true --- that he followed proper protocol by contacting the chaplain to have his kosher meals started at PBSP after being previously approved at another institution --- his argument regarding Losacco fails. Terrell contacted Losacco on September 16, who then made the necessary contacts to the prior institution to determine that Terrell had been approved for kosher meals prior to transfer. Within 8 days, Abdullah issued the

9

chrono authorizing kosher meals. The meals themselves followed approximately 2 weeks later, after the paperwork was processed and the meals were ordered from the offsite vendor. Losacco did not deny Terrell's request for kosher meals, and he took the necessary steps to ensure Terrell received the kosher meals, albeit with a brief delay. Terrell has not shown sufficient evidence to preclude summary judgment.

E. Holt

i. Exhaustion

Defendants move for summary judgment regarding the claims against Holt on the grounds that Terrell failed to exhaust his administrative remedies regarding Holt before filing suit. Terrell has shown no evidence that would preclude summary judgment for failure to exhaust. The undisputed record show that Holt was never named nor were his actions described, in the 602 form, as required by 15 Cal. Code Regs. § 3084.2(a), accordingly summary judgment is granted in his favor.

ii. Merits

Terrell alleges that when he told Holt that he was already approved for kosher meals, Holt "told me they didn't contact the kitchen for Jews, though they did for Muslim and Vegetarian approved new arrivals, I had to write to the chaplain." (Am. Compl., Dkt. No. 10 at 3). However, the undisputed record shows that Holt had no authority over the Religious Diet list and no authority to give Terrell the kosher meals he requested if his name was not on the list. (MSJ, Holt Decl., Dkt. No. 30 at 2). Holt is therefore entitled to summary judgment as Terrell has not presented any evidence that would preclude summary judgment.

F. Peterson

i. Exhaustion

Peterson moves for summary judgment on the grounds that although Terrell did name him in the first level appeal, he did not allege that Peterson was involved in any wrongdoing. Terrell does not dispute Peterson's assertion that he failed to exhaust.

Terrell named Peterson in the first level administrative appeal and described his alleged involvement in the issue. Terrell's first level administrative appeal states that he gave Peterson a

10

CDCR Form 22 on September 23 to "verify PBSP's incorrect protocol requiring Jewish inmates to contact a Chaplain to get a meal they're already approved for." (MSJ, Dkt. No. 36 at 9). The appeal states that Terrell found Peterson's reply vague, and sent it to a supervisor. (*Id*.) The appeal further states that Peterson's is the only reply that Terrell has gotten to his Form 22 requests. (*Id*.) Lastly, the appeal stated that the main kitchen contacted Peterson on September 30 to say they weren't going to order Terrell's kosher meal until they got the chrono, which Terrell asserted they should have gotten by that date. (*Id*.)

Defendants assert that Terrell's allegations against Peterson in the Form 602 do not allege any wrongdoing nor provide sufficient information related to his conduct that the prison would be able to take appropriate responsive measures. Terrell does not dispute this and has not raised any triable issue of fact that would preclude summary judgment on exhaustion. Accordingly, summary judgment will be granted in Peterson's favor.

### ii. Merits

Terrell alleges that after multiple requests for Peterson to call the kitchen and tell them he was approved for a kosher diet and being told that PBSP "doesn't do that," he gave Peterson a Form 22 and had him "clarify Pelican Bay's anti-Semitic policy." (Opp., Plaintiff's Decl., Dkt. No. 40, at 3). Terrell further alleges that due to Peterson's "discriminatory negligence" he was unable to observe his sincerely held belief. (*Id*.) However, the undisputed record shows that Peterson that had no authority to add Terrell to the Religious Diet list or to give Terrell the kosher meals he requested. (MSJ, Peterson Decl. Dkt. No. 29 at 2). Terrell has not shown any evidence that precludes summary judgment on his claim that Peterson violated his First Amendment rights.

## II. QUALIFIED IMMUNITY

Defendants move for summary judgment on the grounds that they are entitled to qualified immunity. Terrell does not dispute defendants' assertion of qualified immunity.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (overruling the

11

sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier v. Katz,* 533 U.S. 194 (2001)). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *Tolan*, 572 U.S. at 656-57.

Defendants are entitled to qualified immunity because they could have reasonably believed that their conduct was lawful. They acted in accordance with their job duties concerning whether they had authority to grant Terrell's request for kosher meals, and they fulfilled the request for kosher meals as soon as they confirmed Terrell's eligibility. It is constitutional for prisons to require paperwork and to have review processes for their religious diet programs. *See Resnick*, 348 F.3d at 771.

Moreover, while inmates do have the right to religious meals, it is not clearly established that they have the right to immediately receive these meals upon request. In a similar case, *Green v. Paramo*, 2018 WL 6062359 (S.D. Cal, Nov. 20, 2018), the court recently found that no precedential authority recognized that a five month delay in receiving a kosher diet after reapplication by an inmate would violate the inmate's constitution right. *See id.* at *4, collecting cases.

It is not "beyond debate" that defendants' conduct violated the constitution. *See Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). Further, Terrell has not shown any evidence that defendants intentionally sought to deny or delay the approval of his request for kosher meals. Accordingly, defendants are entitled to qualified immunity.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment is GRANTED. (Dkt. No. 28). The Clerk shall enter judgment in favor of defendants, terminate Dkt. No. 28, and close the file.

**IT IS SO ORDERED.**

Dated: June 17, 2019



William H. Orrick
United States District Judge

13